**UNITED STATES of America, ex rel., JANE DOE 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4, Plaintiffs,**

v.

**X, INC., and John Does, Defendants.**

**No. CIV.A.98–47–MC.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 23, 2000.

M. Miller Baker, Washington, DC, Brian D. Miller, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff or Petitioner.

## MEMORANDUM OPINION

ELLIS, District Judge.

This False Claims Act case raises the question, unresolved in this circuit, of whether a qui tam action can proceed against a defendant in bankruptcy under the police powers exception to the automatic stay[1] when the United States has not yet decided whether to intervene pursuant to 31 U.S.C. § 3730(b)(4)(B).

### I.[2]

In June 1998, plaintiffs, as qui tam relators for the United States, filed a lawsuit against defendants alleging, *inter alia*, violations of the False Claims Act, 31 U.S.C. § 3729. Over a year later, in July 1999, defendants filed for protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 301 *et seq.* Although this case was filed nearly two years ago, the United States has not yet completed its investigation of the underlying facts, and as a result, has sought a series of extensions of time in which to decide whether to intervene pursuant to 31 U.S.C. § 3730(b)(3). At a hearing on the fifth such request, the question arose whether

the automatic stay provisions of § 362(a),[3] triggered by defendants' bankruptcy filing, applied to this qui tam action, thereby obviating the need for the government's request.

### II.

■ The narrow issue presented here is whether the police powers exception to the automatic stay applies to a qui tam False Claims action where the government has not yet decided whether to intervene. Analysis properly begins with the language of 11 U.S.C. § 362(b), which states, in pertinent part, that the automatic stay does not apply to

> the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's ... police or regulatory power.

11 U.S.C. § 362(b)(4). Thus, whether a qui tam suit against a defendant that has filed bankruptcy fits within this exception raises several questions. The first is whether a False Claims Act suit is a proceeding by a governmental unit to enforce that unit's "police or regulatory power." *Id.* This question is easily and confidently answered in the affirmative, as there is ample authority holding that laws, such as the False Claims Act, that are designed to prevent or stop fraud, or to fix damages for fraud already committed, are police or regulatory laws. *See United States v. Commonwealth Companies, Inc.,* 913 F.2d 518, 525 (8th Cir.1990); *United States ex*

---

1. *See* 11 U.S.C. § 362(a).

2. As the United States has not yet resolved whether to intervene in this case, the file remains under seal, and thus the facts giving rise to this action may not be revealed. In any event, the underlying facts are not necessary to resolve the very narrow legal question presented.

3. *See* 11 U.S.C. § 362(a). The automatic stay provision of the Bankruptcy Code states, in pertinent part, that "a [bankruptcy] petition ... operates as a stay ... of ... the commencement or continuation ... of a judicial ... proceeding against the debtor that was ... commenced before the commencement of the [bankruptcy] case...." 11 U.S.C. § 362(a)(1).

*rel. Marcus v. NBI, Inc.*, 142 B.R. 1, 3 (D.D.C.1992). Moreover, the legislative history of § 362(b)(4) explicitly recognized that a fraud law is a police or regulatory law. *See* S.Rep. No. 989 at 52 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838.

▆▆▆ Yet the inquiry does not end here because § 362(b)(4)'s police powers exception applies only to police or regulatory actions brought by a "governmental unit." Thus, in a qui tam case where, as here, the government has not yet intervened, a second question is presented, namely whether the private qui tam relator qualifies as a governmental unit for the purposes of § 362(b)(4). The answer to this question is not readily apparent because a qui tam relator possesses many of the characteristics of a private litigant, such as a personal financial stake in the outcome of the litigation.[4] On the other hand, a qui tam suit is also undeniably public in nature, as it is brought in the name of, and on behalf of the government, and the government is entitled to the lion's share of any amount recovered. *See* 31 U.S.C. § 3730(b)(1). Moreover, the government retains significant rights in the litigation, even if it chooses not to intervene, such as the right to approve any settlement or agreed dismissal of the action. *See* 31 U.S.C. § 3730(c)(2).

While there is no authority specifically addressing this question,[5] analogous authority from this circuit and elsewhere is, on principle, dispositive. This line of authority does not involve the application of § 362(b)(4), but is nonetheless closely analogous, as it focuses on whether a qui tam suit against a state agency is barred by the Eleventh Amendment because the relator is a private party. Thus, in *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*,[6] the Fourth Circuit panel held that a qui tam suit against a Texas state agency, in which the government declined to intervene, was not barred by the Eleventh Amendment. *See Milam*, 961 F.2d at 50. Other circuits have reached the same result, although not all circuits are in agreement on this point.[7] The rationale for this line of authority is that the United States is the real party in interest in qui tam cases even where the government has not, or elects not, to intervene. This is so because, as noted above, even when it does not intervene, the government receives the lion's share of any amount recovered and retains significant

4. Where the government prosecutes the action, the relator gets 15–25% of the recovery; if the government chooses not to intervene, the relator gets 25–30% of any money recovered by the United States. *See* 31 U.S.C. § 3730(d)(1), (2).

5. The case closest on its facts is *United States ex rel. Marcus v. NBI, Inc.*, 142 B.R. 1 (D.D.C. 1992). There, the district court addressed the question of whether an attorneys' fees action brought by private qui tam relator is exempt from the automatic stay under the police powers exception where the United States had elected to intervene, and the parties had reached a settlement. *See Marcus*, 142 B.R. at 2. The court held that the action was exempted from the automatic stay because the action was "a continuation of and integral to a proceeding that is exempted from the automatic stay." *Id.* at 4. The obvious difference between *Marcus* and the case at bar is that in the former, the government had intervened, thereby rendering the case exempt from the automatic stay, whereas, in the instant case, the government has not yet intervened.

6. 961 F.2d 46, 49 (4th Cir.1992).

7. *See United States ex rel. Stevens v. Vermont Agency of Natural Resources*, 162 F.3d 195 (2nd Cir.1998), *cert. granted*, —— U.S. ——, 119 S.Ct. 2391, 144 L.Ed.2d 792 (June 24, 1999); *United States ex rel. Rodgers v. Arkansas*, 154 F.3d 865, 868 (8th Cir.1998); *United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 39 F.3d 957 (9th Cir.1994), *vacated on other grounds*, 72 F.3d 740 (9th Cir.1995). Two other circuits, the Fifth and the D.C. Circuits, have disagreed with *Milam* and held that the United States is not always the real party in interest in a qui tam suit brought by a private relator. *See United States ex rel. Foulds v. Texas Tech Univ.*, 171 F.3d 279 (5th Cir.1999); *United States ex rel. Long v. SCS Bus. and Technical Inst.*, 173 F.3d 870 (D.C.Cir.1999). Perhaps because of this judicial cacophony, the Supreme Court has granted certiorari in *Stevens*, the Second Circuit case. *See* —— U.S. ——, 119 S.Ct. 2391, 144 L.Ed.2d 792.

rights over the litigation. *See Milam*, 961 F.2d at 49. Just as the United States is the real party in interest in a qui tam suit for Eleventh Amendment purposes, so too must it be that the United States is the real party in interest in all qui tam suits, including those where the defendant files for bankruptcy. Given this, it follows that the instant qui tam suit is "brought by a governmental unit" for the purposes of § 362(b)(4)'s police powers exception, even though the United States has not yet made its intervention election.

The final question raised by the application of § 362(b)(4) to this case is whether the police or regulatory action at issue seeks "enforcement of a judgment other than a money judgment." 11 U.S.C. § 362(b)(4). On this question there is a split of authority, resulting in the application of two related, but different tests to determine when an action seeks enforcement of a money judgment. Under the "pecuniary advantage test," an action, even one seeking entry of a money judgment,[8] is exempt from the automatic stay under the police or regulatory powers exception provided it does not conflict with the bankruptcy court's control over the property of the estate and does not otherwise create a pecuniary advantage for the government vis-à-vis other creditors. *See Commonwealth Companies*, 913 F.2d at 524; *United States v. Nicolet, Inc.*, 857 F.2d 202, 207–09 (3rd Cir.1988). The more narrow "pecuniary interest" test holds that an action by a governmental unit will only be exempted from the automatic stay if the government is seeking to protect public health, safety and welfare, and is not seeking to protect a so-called "pecuniary interest." *See In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440, 445 n. 4 (1st Cir.1986). Under this test, any attempt by the government to fix the amount of damages for a police or regulatory violation renders the action subject to the provisions of the automatic

stay. *See In re Bicoastal Corp.*, 118 B.R. 854 (M.D.Fla.1990).

The more sensible approach, and the one implicitly adopted by the Fourth Circuit, is the pecuniary advantage test, which concludes that § 362(b)(4) permits the government to seek the entry of a money judgment as the remedy for the violation of a fraud or other police or regulatory law. *See Commonwealth Companies*, 913 F.2d at 522. The pecuniary interest test is less sound because it mistakenly assumes that every time the government seeks to enforce a regulatory scheme through the imposition of civil penalties, it is seeking to protect some "pecuniary interest." *See Commonwealth Companies*, 913 F.2d at 524. To the contrary, it is more sensible to assume instead that, in imposing such penalties, the government is simply seeking to deter and punish violations of its regulations. Moreover, the Fourth Circuit has implicitly rejected the pecuniary interest test. *See EEOC v. McLean Trucking Co.*, 834 F.2d 398 (4th Cir.1987). In *McLean Trucking*, the panel held that the EEOC could seek money damages against the defendant, who had filed for bankruptcy, despite the automatic stay because, in seeking to recover back pay for the victims of alleged unlawful discrimination, the EEOC was "proceeding in the exercise of its police or regulatory power." *Id.* at 402. This decision, although rendered in the context of an EEOC action, compels the conclusion that, in this circuit, a police or regulatory powers action seeking entry of a money judgment, such as the instant qui tam suit, is exempt from the automatic stay under § 362(b)(4). *See Commonwealth Companies*, 913 F.2d at 523 (finding that the Fourth Circuit concluded in *McLean Trucking* that "§ 362(b)(4) does not exclude a governmental action to obtain the entry of a money judgment for a past violation of the law").

---

**8.** These courts, and the legislative history of § 362(b)(4), make clear that while the police powers exception includes *entry* of a money judgment against a bankrupt defendant, it

does not extend to enforcement of that judgment. *See Commonwealth Companies*, 913 F.2d at 522; S.Rep. No. 989 at 52 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838.

Consistent with this conclusion, the relators may proceed with this action up to and including the point where the amount of the judgment against defendant is quantified, but, if defendant remains in bankruptcy, relators cannot seek enforcement of that judgment. *See Commonwealth Companies*, 913 F.2d at 522. Given this result, it is necessary to consider whether a further extension of time is warranted for the government to decide whether to intervene. The extension of time is warranted, and an appropriate order will enter.